## Zachariah Chandler v. John H. Allison.

Defendant was sued in trespass for destroying a store occupied by plaintiff, whereby the latter was deprived of its use, and prevented from carrying on his business. It appeared that plaintiff was tenant of the store under defendant, but the declaration was silent on the subject of a tenancy, and it was held not competent for plaintiff to prove and recover as damages the amount and value of repairs made by him upon the store prior to the trespass.

But *held*, that evidence of repairs made to counteract the effects of an attempt upon the property by defendant, before its final demolition, was competent — the declaration being broad enough to cover the entire transactions.

*Held also*, that it was competent for plaintiff to give evidence that portions of the store were underlet by him, and at what rates; as such evidence went to show whether the portion which he retained and occupied was held by him at an advantageous rate, and whether, therefore, his rights were worth anything.

*Held further*, that it was competent for plaintiff to give evidence that after the trespass he procured another store for his business, which was the best he could obtain for the purpose, but less advantageous than the one destroyed. Such evidence tends to diminish, and not to increase the damages, by showing that plaintiff has obviated the evil effects of the trespass so far as was in his power.

CHANDLER V. ALLISON.

The declaration in trespass alleged that plaintiff's store was rendered uninhabitable, and that the plaintiff was, up to the commencement of the suit, hindered and prevented from carrying on his business as a merchant, engaged in selling watches, jewelry and silver ware. *Held*, that under this declaration, plaintiff might give evidence of a partial deprivation of business, which would have been total had no other building been attainable.

Offers, by way of compromise, not accepted, whether liberal or the reverse, cannot affect the legal rights of parties.

The object of cross examination is to elicit the whole truth concerning transactions which may be supposed to have been only partially explained, and where the whole truth would present them in a different light.

Whenever an entire transaction is in issue, evidence which conceals any part of it is defective, and any question which fills up the omissions of the witness whether designed or accidental, is legitimate and proper on cross examination. A party cannot glean out certain parts which alone would make out a false account, and save his own witness from the sifting process without which those omissions can not be detected.

Nor can one be compelled to make his adversary's witness his own, to explain or fill up a transaction he has partially explained already.

*Heard July 15th. Decided October 14th.*

Error to Wayne Circuit.

Allison brought suit against Chandler, and declared in trespass as follows:

"For that the said defendant, on the fourth day of August, 1860, and on divers other days and times between that day and the time of commencing this suit, with force and arms broke into and entered a certain store of the plaintiff, situated and being in the city of Detroit and county of Wayne aforesaid, and known as number one hundred and seventy-six, on the south side of Jefferson Avenue, in said city of Detroit, and then and there forced off, broke to pieces, and utterly destroyed the roof of said store, and also during the time aforesaid forced away and broke to pieces a large portion of the brick wall of said store, and thereby rendered the same untenantable and uninhabitable. By means of which said several premises, he, the said plaintiff, during all the time aforesaid, was not only greatly disturbed and annoyed in the peaceable possession of the said store of the said plaintiff, but also he, the said plaintiff, was during all that time hindered and prevented from carrying on his lawful and necessary

business as a merchant in said city, engaged in selling watches, jewelry and silver ware, to wit, at Wayne county aforesaid.

"And, also, for that the said defendant, on the 22d day of August, 1860, with force and arms, broke and entered into a certain other store of the said plaintiff, situated and being on the south side of Jefferson Avenue, in the city of Detroit and county of Wayne aforesaid, the same being known as No. 176, on said Jefferson Avenue, Detroit, and then and there ejected and expelled, put out and removed the said plaintiff from the possession, use, occupation and enjoyment of the said store, and kept and continued him so ejected, expelled, put out and amoved for a long space of time, to wit, from thence hitherto, whereby the said plaintiff, for and during all that time, lost and was deprived of the use and benefit of his said store, to wit, at Wayne county aforesaid. And other wrongs to the said plaintiff then and there did, to the great damage of the said plaintiff, and against the peace and dignity of the State of Michigan."

The defendant pleaded the general issue, with notice that he should prove on the trial, "that for many years, to wit, ten years previous to the commencement of this suit, the defendant had and ever since has been the owner in fee simple of the premises described in the plaintiff's declaration: that previous and up to the 1st of August, 1860, said plaintiff had been in possession of said premises under a lease from and as tenant of said defendant: that on or before that day said plaintiff's right to the possession of said premises, as such tenant, had come to an end by the expiration of said lease; that said plaintiff, upon demand of said defendant, had wrongfully refused to deliver up possession of said premises to said defendant; that said defendant, having duly notified said plaintiff that he had made a contract for the rebuilding of the store mentioned in said declaration, and was about to demolish

said old store and rebuild a new one in its place, and requiring him to give up possession of said premises, rightfully, but without force or violence, entered upon the roof of said store, and removed a part of the side-wall thereof, but without injury to the person or property of said plaintiff—which are the same trespasses complained of in said declaration; and any damage which said plaintiff thereby sustained was in his own wrong, and through his own fault and wrongful refusal and neglect to leave said premises."

The cause coming on for trial, the plaintiff was sworn as a witness, and testified:

That in August, 1860, he was occupying the store number 176 Jefferson Avenue, in the city of Detroit, which was owned by the defendant; that he had commenced occupying under the defendant on the 1st day of May, 1854, by virtue of a verbal lease from defendant for one year, at a rent of $900 per year, payable at the end of each quarter; that defendant told him that he might occupy as long as he wanted it and paid the rent; that he occupied until 1860 under this arrangement, and that there was no new contract after May 1st, 1854.

Witness further gave testimony tending to show that he had a conversation with defendant in the fall of 1859, in which the latter spoke about the rent of the store, and said he talked of raising it after the 1st of May, 1860; that defendant then said that he would let plaintiff know by the 1st of February, 1860. Allan Shelden, the defendant's agent, called on the plaintiff and presented a bill for quarter's rent then due, and informed plaintiff that his rent, after May 1st, 1860, would be $1,000 per year, and plaintiff then asked Shelden how many years he could have it at that rate, and he replied that he did not know.

The plaintiff's counsel then asked the witness, if, after this notice from Shelden, he made any repairs on said building; if so, to what amount? Which question was

objected to, but the objection overruled, and the witness testified that he expended about one hundred dollars in repairs; that he continued occupying said store till about the twenty-fourth day of August, 1860, and that he paid rent for the quarter ending August 1st, 1860, at the rate of $900 per annum; the bill presented by defendant's agent being for $225.

The plaintiff's counsel then showed to the witness a written notice from defendant to witness, dated August 4th, 1860, by which the defendant notified the plaintiff that, on Tuesday next following said date, the defendant would commence the demolition of the store occupied by the plaintiff, and witness testified that he received said notice on said August 4th, 1860.

Witness then testified that on the 15th day of August, 1860, he found a gang of men on the store, tearing off the roof, and he caused them to be arrested; that the plaintiff occupied the first and third stories of the store, and that the second story was underlet by him to one Gates, and the basement to one Heffron.

The witness was then asked by plaintiff's counsel what rent was paid by them, said Gates and Heffron. Which question was objected to as immaterial and incompetent under the plaintiff's declaration. The Court overruled the objection, and the witness testified that Gates paid $150 per year to him, and Heffron $100 per year.

The witness was then asked whether he was put to any expense, and if so, how much, in repairing said roof after the said first attempt to demolish said store. Which question was also objected to, but allowed, and the witness testified that on the 21st day of August, 1860, a gang of eight men entered upon the roof of said store, and tore off the roof, pushed off the gable end, and did other damage to said building; and that in consequence said store became untenantable; that he could not longer occupy it, and that he left said store on or about August 23d or 24th, 1860.

CHANDLER v. ALLISON.

The counsel for plaintiff then asked the witness if he hired another store; to which question the counsel for the defendant then and there objected, as being wholly immaterial under the issue, and under the plaintiff's declaration in this cause. But the Court overruled the objection, and the witness testified that he then hired another store, known as 198 Jefferson Avenue, which was the best store he could then obtain.

The counsel for the plaintiff then asked the witness how the store, so hired by him, compared as a place of business with the one from which he removed. And under objection, he testified that the new store was not as good a place for business as the old one; that it was not so much of a thoroughfare, being so much farther from Woodward Avenue; that it was not so good for his business, which was that of a jeweler, gold pen making and watch repairing, of which the last item formed an important part.

The counsel for defendant then cross-examined the said witness, and on such cross-examination he testified, that he first heard of defendant's intention to rebuild in the street, but could not say at what time; that said defendant said nothing whatever to him in the fall of 1859 about his rebuilding said store.

The witness was then asked by the defendant's counsel whether he had a conversation with the defendant in the spring of 1860, about his rebuilding said store, and if so, did defendant inform him that he might rebuild said store?

To which question the plaintiff's counsel objected, as not being proper cross-examination; and the Court sustained the objection.

The witness further testified on said cross-examination, that prior to February 1st, 1860, he had a conversation with Shelden, defendant's agent, in regard to defendant's rebuilding said store; that in the early part of winter, and as he thinks about the middle of December, he went to see Mr. Shelden, to obtain information as to whether

defendant intended rebuilding, as he had heard such a report; that Shelden told him he knew nothing of it; that defendant was then at Washington. But witness does not know whether Shelden told him that, if he wished to know, he had better write to Mr. Chandler; that Shelden may have said so; that at the conversation with Shelden, February 1st, 1860, nothing whatever was said by either party about defendant's rebuilding, and nothing was then said by Shelden of defendant's reserving any right to rebuild.

The witness was then shown a letter, dated March 7th, 1860, written by him to defendant, and a letter from defendant in answer thereto; witness identified the letters, which were read in evidence, and copies of which are given below.

The counsel for the defendant then asked the witness, whether he did not have a conversation with the defendant between the 1st day of February, 1860, and the 1st day of May, 1860, about rebuilding said store, in which said defendant said that he should rebuild the store if Mr. Joy built. To which question the plaintiff's counsel objected, on the ground that it was not proper on cross examination. The Court sustained the objection, and excluded the testimony.

The counsel for the defendant then asked the witness, whether the defendant did not, about ten days previous to the time of his leaving said store, offer him another store in the Phœnix Block, free of rent, which was the fifth store from the corner of Woodward Avenue, if witness would leave said store without any difficulty. Which question, on objection, was ruled inadmissible.

The witness was further asked by the defendant, whether he did not have a conversation with defendant about the 1st of August, 1860, in which the defendant said, that if the plaintiff wished to remain in said store, he would shore up the wall so as to make the plaintiff as little

trouble as possible while he was building the adjoining store, and that the said plaintiff in said conversation refused to permit defendant to do so. Which question was also ruled inadmissible on cross-examination.

Further evidence having been given, the cause was submitted to the jury, who returned a verdict for plaintiff.

The following are copies of the letters above referred to:

"Hon Z. CHANDLER,

DEAR SIR:—Mr. Shelden has informed me that my future rent will be $1,000; if such is the fact, can I have a lease for five years?

I wish to make some improvements, which will cost me quite a sum: consequently I wish to know what I can expect. Please let me know at your earliest convenience.

Yours respectfully,

DETROIT, March 7th, 1860.     J. H. ALLISON."

"WASHINGTON, March 12th, 1860.

J. H. ALLISON, Esq.

DEAR SIR:—You can have the store for five years, at the rent mentioned, unless I should in the mean time conclude to rebuild the store. I should reserve that right, but in that case you would have the preference for the new store, being an occupant of the old.

Yours truly,     Z. CHANDLER."

Judgment having been rendered on the verdict, defendant brought error.

*Jerome & Swift* and *A. B. Maynard*, for plaintiff in error:

The rules which determine the question of damages in these cases seem to be as follows:

Those damages which *necessarily* result from the injury complained of, are called general damages; and are implied in law, and are covered by, and recoverable under, a general allegation of damage in the declaration.

Those damages which are the *natural* consequences of the act complained of, but not the *necessary* result of it,

are termed special damages, are not implied in law, and must be particularly specified in the declaration, or the plaintiff will not be permitted to give evidence of them at the trial; — 2 *Greenl. Ev.* § 254; 1 *Chit. Pl.* 395; 13 *Barb.* 183; 4 *Q. B.* 493; 14 *Wend.* 159; *Peake's Cases* 62; 2 *Barb.* 525; 11 *Ind.* 522; 1 *Dutch.* 121; 6 *Barb.* 424; 12 *Wend.* 64; 29 *Ill.* 184; 25 *Ala.* 716; 1 *Comst.* 516; 17 *Pick.* 79; 4 *Seld.* 115; 14 *Wend.* 41; 17 *Wend.* 73.

Now it would seem to be clear, from the above authorities, that all that plaintiff could recover under the first count of his declaration would be the actual injury to his store, and the loss sustained by the interruption of his business. That he should remove from the building, or that he should repair it, would not seem to be the necessary result of the trespass; although either of them might be the natural consequences of it. Either would be natural, the last most so : but as neither would be the necessary result of the alleged trespass, if the plaintiff sought to recover for either, he should have specially alleged it in his declaration. We claim, therefore, that under this count of his declaration, he could neither recover for repairs nor for his removal and the consequences of it. At any rate it would seem to be clear, that if making repairs was the *necessary* consequence of the trespass complained of, removing from the store was not, and *vice versa.*

The second count of the declaration is for ejecting the plaintiff from his store, and keeping him out of it, and the consequent loss of the use of the store. Under this count the plaintiff could only recover for the ouster, but not for the continuance of the wrongful act in keeping out the plaintiff after the commencement of the suit; which would itself be a wrongful act, but neither the necessary nor natural result of the original ouster : — 3 *Bl. Com.* 210; *Sedg. on Dam.* 134; 2 *Johns. Cas.* 27; 3 *Denio*, 283.

It would certainly not be the *necessary*, and hardly the *natural* consequence that he would be kept out of his

store for the remainder of his term. Would it not be as natural a consequence that he would regain possession by re-entry, and ouster of the wrongdoer, or by an action of forcible entry and detainer ?

It would seem, therefore, that he could not under this count recover for the damages sustained by removing into another store, and the consequences thereof. The making repairs could neither be the necessary nor natural consequence of the ouster.

The relation of landlord and tenant could add nothing to the amount of damage sustained. If the plaintiff had any claim against the defendant, growing out of a breach of the duties of that relation, his remedy was in another form of action. Whether the plaintiff was his landlord, or a mere stranger, could at any rate make no difference in ascertaining the amount of special or consequential damage occasioned by the trespass complained of.

It is only the party in possession that can maintain trespass for injury to property.

The plaintiff therefore was not entitled to recover for injury to the premises occupied by Heffron and Gates. He might in an action on the case have recovered for damage he had sustained by loss of rent. But it certainly could not be considered the natural or necessary consequence of trespass to property in his possession, that he should lose the rent received from tenants in the possession of premises not occupied by him, and therefore in order to recover for it he should have specially alleged it.

And as the evidence to show the amount of rent paid by plaintiff's tenants could have had no effect except to show how much damage he had sustained in losing them, it was clearly inadmissible.

And it was also inadmissible as not furnishing a true criterion by which to determine the amount of damage which the plaintiff had suffered by loss of tenants, and as therefore tending to mislead the jury.

CHANDLER *v.* ALLISON.

The evidence with respect to the change of location, and how the store hired compared with the other as a place of business, was clearly inadmissible for like reasons.

The evidence sought to be obtained on cross-examination was clearly admissible, as tending to qualify materially the case made by the plaintiff's testimony, on his examination in chief, and intimately connected with the matters stated in his direct examination.

*E. C. Hinsdale* and *C. I. Walker*, for defendant in error:

1. The damages, which the evidence objected to tended to show, are within the most general rule applicable to general averments in a large class of cases, viz: that such damages may be shown as are the necessary and proximate consequence of the act complained of: — *Sedg. on Dam.* (*3d Ed.*,) § 65 to 79, *and cases cited.*

To illustrate this proposition, let us consider the items of damages to which the evidence points:

It was proper to show the rent paid by the plaintiff's sub-tenants, as that rent certainly formed a part of the value of the use of the store of which the plaintiff had been deprived. Suppose that this rent had exceeded the rental payable by the plaintiff below, surely, if there were no other damages, the plaintiff would be entitled to that excess; and it can not be erroneous to admit evidence that might establish just such a state of facts.

The plaintiff made repairs, after making a bargain with the defendant's agent for another year, and these were lost by the defendant's trespass. Suppose that the plaintiff, instead of repairing one building, had put up the whole of one, as an out-building, for his use during his term, and the trespass had consisted in destroying such out-building entirely erected by the plaintiff, can there be a doubt that there could be a recovery therefor under averments of general damage? The law would "imply" such damages; yet there can be no distinction in principle between the two cases.

The same reasoning applies to repairs made to put the building in condition for use after the defendant's first attempt at destruction.

It is damages that the law implies which can be shown under general averments: special averments are required to prevent surprise on the defendant: — 1 *Chit. Pl.* 396 (12 *Am. Ed.*) ; 2 *Greenl. Ev.*, § 254.

We proceed to the consideration of the evidence as to plaintiff's having another store, and as to how it compared, as a place of business, with the one from which he was driven by defendant.

In order that the jury might judge of the nature and extent of the injury sustained by the plaintiff, the latter had a right to place the jury, as nearly as possible, in a situation to know all the facts and circumstances attending this wrong done to him, and the condition in which he was before the injury, and the effect of that injury, as fully as if they had been actually cognizant of the facts as they transpired.

For the purpose of showing this effect of the defend ant's trespass, the plaintiff offered evidence of his hiring another store, the best which he .could obtain, and of the fact that it was not as good as the one from which he had been so summarily driven.

This evidence was clearly proper: — 5 *Duer*, 559 ; 12 *Conn.* 575 ; 11 *Price*, 19 ; 4 *Barb.* 261.

2. But if the testimony, to which the objection was made, was inadmissible under general averments in the declaration in ordinary actions upon contracts, or torts committed without willfulness or moral wrong, still, in cases of illegal or mischievous conduct, of reckless and deliberate wrong, the disposition of courts is to make the party in the wrong liable for injurious consequences flowing from the illegal act, although they be remote; and on this ground the testimony was all admissible : — *Sedg. on Dam.* § 88 ; 7 *Ired.* 365 ; 5 *Day*, 140 ; 2 *McCord*, 277 ; 5 *Duer*, 64 ; 3 *Wils.* 118 ; 1 *Blackf.* 56 ; 10 *Md.* 76.

CHANDLER *v.* ALLISON.

In trespass for injury to a building occupied by the plaintiff as a store, resulting in an interruption of his business, he may recover in addition to the damage done the building, such further sum as will compensate him for the loss of its enjoyment.

For this purpose it is competent to prove the nature and extent of his business, and the necessity of its use to him: 5 *Ohio St. Rep.* 594. See also, 4 *Moore*, 12 ; 4 *E. D. Smith*, 347 ; 3 *W. & S.* 540 ; 3 *H. & McH.* 510.

There is another rule of law well settled by the authorities, which confirms the view above taken, as to the admissibility of all the evidence objected to.

It is, that in cases of willful tort accompanied by aggravating circumstances, the jury may give exemplary damages, and this, where there are no averments of special damages: 5 *Taunt.* 442 ; 34 *Penn.* 53 ; 13 *How.* 371 ; 3 *Wis.* 424 ; 16 *B. Mon.* 577 ; 6 *Pet.* 272 ; 10 *Conn.* 384 ; 4 *Bibb*, 502 ; 19 *Ill.* 631 ; 2 *Stark.* 317 ; *Sedg. on Dam.* §§ 38 *and* 39, *and Appendix to* 3*d Ed.*

If in such cases damages beyond the mere pecuniary loss can be recovered, *a fortiori* should the plaintiff be permitted to show all loss and damage, which were the natural result of the defendant's wrongful acts, though not specially set forth in the plaintiff's declaration.

Under the averment of '*alia enormia,*' the evidence was admissible, as under this allegation "damages and matters which *naturally* arise from the act complained of may be given in evidence in aggravation of damages, though not stated specially : — *Chit. on Pl.* 397 ; 2 *Saund. on Pl. and Ev.* 1121.

3. Four questions were proposed upon cross-examination relating to matters not touched upon in the remotest degree upon the direct examination.

This evidence was clearly inadmissible under the rule established by this Court : — *People v. Horton,* 4 *Mich.* 69 ; *Campau v. Dewey,* 9 *Mich.* 381.

CHANDLER v. ALLISON.

The testimony as to Chandler's offer of another store in Phœnix Block, and of his offer to shore up the walls of the store occupied by the plaintiff, to which the eighth and ninth assignments of error point, was inadmissible, on the further ground of irrelevancy.

It certainly could not be admissible in mitigation of damages, since the refusal of the plaintiff to part with his · right to the premises could not palliate the wrong of driving him away with strong hand.

CAMPBELL J.:

Plaintiff in error was sued in trespass by defendant in error, for destroying a store occupied by the latter, whereby the latter was disturbed in his possession, prevented from carrying on his business as a silver smith, ejected from the premises, and deprived of the use and benefit of the store.

It appears from the evidence that plaintiff in error was Allison's landlord, and was desirous of rebuilding, and had, previous to the trespass, requested him to vacate the premises. The declaration does not allude to any such relation, but it was set up in the plea with matters relied on by way of excuse and defense. The questions · before us all arise upon the reception or rejection of testimony.

Allison was permitted, under exception, to show the amount and value of certain repairs made by him before the trespass; and this is claimed to have been erroneously allowed. The declaration being entirely silent concerning any tenancy, makes out no other case than would have been set up against a stranger. Such an injury as is complained of does not spring from any infringement of rights arising out of contract, and proof of any such damages is not therefore pertinent to the issue as framed. The injury declared upon is to an existing possession, and how or at what expense the property was put in its then condition, in no way affects the condition itself. The evidence was we think improperly received.

10 MICH.—E2.

Exception is also taken to the admission of testimony showing that certain portions of the building were under-let to Gates and Heffron for rents which were named. It appeared that Allison rented the whole building, includ-ing their apartments, for a certain yearly rate, and only occupied a portion for his own business. A material inquiry in regard to his own injury from the ouster would be whether the premises occupied by him were held at an advantageous rate — and whether therefore his rights were worth anything. The evidence admitted went to show precisely what his own portion of the building cost him. This is an essential inquiry, and necessary to determine the value of the leasehold. This testimony was we think properly received.

Objection was also made to the reception of evidence showing that, after the first attempt on the property, and before its final demolition, repairs were made to restore the first injury. The declaration is broad enough to cover the entire transactions, and those repairs were the neces-sary means of counteracting the first trespass. The cost of restoring the property to its former condition, is, in a case like the present, where the party had not been actu-ally ousted, and they were made to render it habitable, a very obvious measure of a principal branch of damages. We see no ground on which this evidence should have been excluded.

The Court below allowed Allison to show that he had hired another store, which was the best he could obtain, and also that it was inferior as a business stand for his business to the store out of which he was driven by the trespass; and both of these portions of evidence it is claimed should have been excluded, partly as not admis-sible at all, and partly as not covered by the declaration.

It has always been considered incumbent upon any person subjected to injury to use such means as are rea-sonably in his power to make the evil consequences as

CHANDLER v. ALLISON.

light as possible. Under what circumstances, if any, such efforts are not required it is unnecessary to inquire. Where such efforts are made, and the injured party succeeds to any extent in reducing his actual damages, his claim for redress must be reduced accordingly. It can hardly be denied that had Allison found an equally eligible stand at an equal rent, he would have suffered less pecuniary injury than by having his business entirely broken up. Whether he would have been compelled or not to seek such a place, yet, having sought and found it, his damages would certainly have been reduced. And there seems no good reason why the actual obtaining of another store, as good as could be had, would not have a similar effect in showing the actual damage suffered. The evidence tends to lessen and not to increase the damages; and, while it would usually be introduced by way of defense, there is no reason why the plaintiff should be debarred from showing the true state of the case. How far such testimony could be made available on either side, without encountering the difficulties of speculative damages, must depend upon other facts. But it certainly serves an important purpose in explaining the true condition of affairs, and placing the jury where they can better comprehend it. And, in all those cases where practically the verdict must be to a certain extent a matter of opinion as to the amount of injury, the jury should have the facts brought before them as clearly as possible.

The principal objection to allowing this evidence was based upon the form of the declaration. The damages arising from an interruption of business are unquestionably the natural result of such an injury as is complained of, but it is claimed they are not a necessary result, and should therefore be alleged. It is undoubtedly true that such damages as are not the necessary results of a trespass must be alleged. But in the case before us they are specially alleged, with as much particularity as can be

found in the precedents.    The first count avers that the store was rendered uninhabitable, and that the plaintiff below was, up to the commencement of suit, hindered and prevented from carying on his business as a merchant engaged in selling watches, jewelry and silverware.    The second count also charges a continued removal and ouster, whereby he was during the whole period deprived of the use and benefit of his store.    Both of these counts point out the deprivation of the use and benefit of the store as the special grievance and ground of damage, and the first count is specific as to the kind of business which was interrupted. Under the first count there can be no sound objection to the testimony.    It goes directly to the hindrance to his business, and shows a partial interruption, which would have been total had no other building been attainable. The declaration is broad enough to cover a total interruption, and certainly will permit any qualification of such a total loss.    There was no error in receiving this proof.

The remaining errors assigned refer to the rejection by the Court of certain questions proposed by Chandler on the cross-examination of Allison, who was a witness on his own behalf.    He was asked whether prior to the trespass Chandler did not offer to give him another store free of rent, if he would remove without making any difficulty. This question was ruled out, and, we think properly.    It would not have been pertinent for any purpose.    The question of right to the possession could not be affected by any offers of compromise, or offers to buy off Allison, if they were not accepted.    Offers not accepted, whether liberal or the reverse, cannot change the legal rights of either party.

Allison was also asked on cross-examination two questions, as to whether in the spring of 1860, and also whether between the twentieth of February and the first of May 1860, he did not have conversations with Chandler in which the latter said he might rebuild the store, and that he

should rebuild it if Mr. Joy built upon his adjoining property. These questions were ruled out.

We think both of them were admissible. The principal point in controversy was whether Allison had an unqualified present interest as a tenant of Chandler. That he was a tenant was conceded, and the only point in issue on that subject was whether, under the terms of his holding, Chandler had a right to require him to leave, in order to rebuild upon the premises. The questions put to the witness were aimed at ascertaining the precise terms of the letting. They were designed to determine the real character of the transaction in issue. They did not relate to matters in avoidance of it, and, without the information they called for, it could not be presented in its true light. It is difficult to perceive any principle upon which such questions can be held improper on cross-examination. The only object of this process is to elicit the whole truth concerning transactions which may be supposed to have been only partially explained, and where the whole truth would present them in a different light. Whenever an entire transaction is in issue, evidence which conceals a part of it is defective, and does not comply with the primary obligation of the oath, which is designed to elicit the whole truth. If the witness were, as he always may be, requested to state what he knows about it, he would not do his duty by designedly stopping short of it. Any question which fills up his omissions, whether designed or accidental, is legitimate and proper on cross-examination. When the answers are given the nature and extent of the transaction becomes known from a comparison of the whole, and each fact material to a comprehension of the rest is equally important and pertinent. A party cannot glean out certain parts, which alone would make out a false account, and save his own witness from the sifting process by which only those omissions can be detected. There could be no such thing as cross-examination if such a

course were allowed. No one could expose a frauduler witness for his dishonest concealments; and every one wh knew of such practices would be driven to the necessit, of calling, in his own behalf, an adverse witness to sho·· his own concealments, whom, if perjured, he ˙could no impeach. The absurdity of such a process is too plain t need pointing out. No one can be compelled to mak his adversary's witness his own to explain or fill up transaction he has partially explained already. The Cour erred in refusing to permit these questions to be put t the witness.

The judgment must be reversed, with costs, and a new trial granted.

MANNING and CHRISTIANCY JJ. concurred.

MARTIN CH. J.:

I concur with my brother Campbell that the judgment should be reversed. Upon the subject of the admissibility of the cross-examination of Allison, respecting his interest and the terms of his holding, I have no doubt but that the questions were proper, as they related to facts and circumstances connected with the matters stated in his direct examination, and to no new matter touching the merits of the case. They related to the terms and conditions of the holding, respecting which Allison had already testified; and are admissible under the rule of *The People v. Horton, Dewey v. Campau, The Phil. & T. R. R. Co. v. Simpson*, 14 *Pet.* 448, and *Johnson v. Jones* (reaffirming the rule), 1 *Black*, 209.

*Judgment reversed.*