## John H. Allison v. Zachariah Chandler.

Where suit is brought for a trespass committed while the defendant was acting in good faith, and under an honest belief that he had a legal right to do the act complained of, the plaintiff is entitled to recover only the actual damages sustained by him, and not damages of a punitory or exemplary character.

Except in those actions where punitory or exemplary damages may be given, and those whose principal object is the establishment of a right, and where nominal damages may be proper, the only just theory of an action for damages, and its primary object, are, that the damages recovered should compensate for the injury sustained.

ALLISON v. CHANDLER.

The statement that the rule of damages, where there is no fraud, willful negligence, malice, oppression, &c., is the same in actions of tort as in those upon contract, though doubtless true in its application to those cases of tort where, from the nature of the case, elements of certainty exist by which substantial compensation may be readily estimated, and other cases which are but nominally in tort, can not be accepted as a principle of universal application, nor be justly applied to any case of actual aggressive tort, where, from the nature and circumstances of the case itself, no such elements of certainty are found to exist, or none which will apply substantially to the whole case; nor to any case where the rule applicable to breaches of contract would exclude a material portion of the damages the injured party may have suffered, though the amount of the latter may not be capable of accurate calculation by any fixed and definite rule.

Where from the nature of the case the amount of the damages in an action of tort can not be estimated with certainty, or only a part of them can be so estimated, all the facts and circumstances of the case, having any tendency to show damages, or their probable amount, may be placed before the jury, so as to enable them to make the most intelligible and probable estimate which the nature of the case will permit.

Where by reason of defendant's trespass the plaintiff is deprived, for the remainder of his term, of premises leased by him, he is not limited in his recovery of damages to such sum as the term might be worth to others, or the difference between the rent he was paying and the fair rental of the premises, if the premises were of much greater and peculiar value to him, on account of the business he had established, and the resort of customers to that particular place, or the good will of the place in his trade or business.

And where, in consequence of the trespass rendering the premises untenantable, plaintiff was obliged to remove to another place of business, he is entitled to show, in an action for the trespass, that his business fell off in consequence, and how much.

As a general thing, in an action purely of tort, where the amount of profits lost by the injury can be shown with reasonable certainty, they are not only admissible in evidence, but they constitute, thus far, a safe measure of damages.

And where the plaintiff was engaged in the business of repairing watches, making gold pens and selling jewelry, on the premises which were rendered untenantable by the trespass, it was held that evidence of his past profits in that business at that place, though they could not be taken as the exact measure of future profits, were proper to be proved and taken into consideration by the jury, and allowed such weight as they, in the exercise of good sense and sound discretion, should think them entitled to.

Where one commits a trespass, it is immaterial whether he actually contemplates the damages which result or not. He must be held to contemplate all the damages which legitimately follow from his illegal act.

*Heard July 14th and 15th. Decided October 20th.*

Error to Wayne Circuit, where Allison brought suit against Chandler for trespass in breaking into a store occupied by plaintiff in Detroit, and tearing off the roof, and committing other injuries by which it was rendered untenantable. The case was once before in the Supreme

Court, and a full statement of the pleadings will be found in 10 Mich. Rep. 460. The prior judgment having been reversed, the following proceedings took place on the new trial.

The plaintiff being sworn as a witness, gave testimony tending to show that in August, 1860, the plaintiff was the tenant of the defendant, in store number 176 Jefferson avenue, Detroit, and had been for several years, and as such tenant was rightfully in the possession of said store, and entitled to the peaceable and quiet enjoyment thereof, until May 1st, 1861, under an agreement made February 1st, 1860; that about August 15th, 1860, the defendant caused the roof of said store to be torn off; that plaintiff repaired said roof; that a few days afterwards defendant again caused the roof to be torn off, and the gable end to be forced away and thrown down, and thus rendered the store entirely untenantable, and the plaintiff was in consequence forced to leave said store, and thereupon hired another store, the best he could obtain, but not nearly as good for his business, which consisted largely in repairing watches, making gold pens, and selling jewelry.

The counsel for the plaintiff then asked the witness how much the watch repairing business was worth a year? To which question the defendant objected as incompetent, and the Court sustained said objection, and excluded said testimony, and plaintiff excepted.

The counsel for the plaintiff then asked the witness what was the extent or value of his whole business? This question was in like manner objected to and excluded, as were also the further questions, whether his business, during the year prior to the time when said store was torn down, was a profitable one?

And whether, after his removal to the new store, his business fell off, and if so, how much?

The witness then further testified, that the reasons why his new place of business, which he obtained, was not as

good a place for business as the store from which he was ejected, were that his customers did not come to the new store, there was not so much of a thoroughfare by it, not one quarter of the travel, and he relied very much on chance custom, especially in the watch-repairing and other mechanical business.

The plaintiff further to maintain the issue on his part, called as witnesses, S. V. R. Herrick, G. W. Gatch and Samuel Hittel, whose testimony tended to show, that the plaintiff was, on or about the 21st of August, 1860, rightfully in the possession of said store, under an agreement made between plaintiff and defendant; that defendant then caused the roof and gable end to be destroyed when plaintiff's clerk and sub-lessee were sleeping therein. And the testimony of said Hittel tended to show the conduct of defendant prior to the pulling down of said store, and his threats about pulling it down; and thereupon said plaintiff rested his cause.

The defendant, on his part, called as witnesses, Z. Chandler, Allen Sheldon, G. D. Hill, and John Heffron, whose testimony tended to show, that the plaintiff was not rightfully in the possession of said store at the time of his ejectment; that his right to the occupancy was dependent on the defendant's wish to rebuild; that defendant had reserved that right, and before tearing down said store had notified said plaintiff that the defendant was about to rebuild, and that plaintiff must leave the store: the defendant thereupon rested his cause.

The Circuit Judge charged the jury, upon the question of damages, as follows:

1st. If the plaintiff is entitled to recover, he can only recover his actual damages if the jury find that the defendant, in doing the acts complained of, acted without malice and in good faith, under the belief that he had a legal right to the possession of the store, and to tear it down, and that, in determining the question of damages,

they should not take into consideration the value of the good will of the place, or the plaintiff's probable profits.

2d. That if the jury find for the plaintiff, and find that the defendant, in tearing down the store, acted in good faith, and under an honest belief that he had a legal right to do so, that then the plaintiff can only recover his actual damages; and in determining them, the jury must confine themselves to the expenses of repairs after the first tearing off the roof, his loss of time and expense of moving, with the loss occasioned by the interruption of his business during the time of his removal, together with the difference, if any, between the rent paid and the fair rental value of the store for the year. And in determining this, the jury will take into consideration all the facts and circumstances of the case.

To this charge the plaintiff excepted, and judgment having been rendered in his favor for $100 only, the case came up for review upon the several exceptions thus taken.

*C. I. Walker*, for plaintiff in error, cited:

1. To show that "good will" and the injury thereto is a proper element in the damages to which plaintiff was entitled: — 15 *Ves.* 224; 17 *Ves.* 346; 5 *Russ.* 29; 6 *Beav.* 276; *Jac.* 607; 1 *Hoff. Ch.* 69; 4 *Sandf. Ch.* 380; 4 *Paige*, 480; *Coll. on Part.* § 162; *Story on Part.* §§ 99, 100.

2. That irrespective of the question of good will, it was both proper and necessary to prove the value and extent of plaintiff's business, before and after the trespass, for the purpose of showing the extent of the damage caused by the trespass: — *Evans' Pothier*, 159–162; 3 *La. An.* 332; 4 *Mart. N. S.* 107; 9 *La. An.* 273; 3 *La. An.* 44; 1 *T. Raym.* 77; 11 *Price*, 19; 20 *E. L. & E.* 410; 9 *Wend.* 325; 17 *Wend.* 71; 7 *Hill*, 61; 35 *Barb.* 17; 7 *Cush.* 516; 13 *How.* 344; 36 *Penn.* 360; 3 *E. L. & E.* 497; 22 *Barb.* 278; 9 *Exch.* 341; 3 *Barb.* 424; 16 *N. Y.* 489; 11 *Ill.* 616; 18 *Vt.* 620; 6 *Mich.* 356; 2 *Stark.*

ALLISON v. CHANDLER.

106; 9 *Bing.* 68; 28 *E. L. & E.* 335; 10 *N. Y.* 489; 13 *How.* 101; 1 *Blatch.* 211; 8 *Pick.* 351; 13 *How.* 363; 8 *Q. B.* 779; 4 *Moore,* 12; 2 *Bing. N. C.* 281; 6 *Bing. N. C.* 212; 3 *Duer,* 406; 5 *Duer,* 559; 6 *Duer,* 315; 5 *Ohio St.* 594; 23 *Wend.* 425.

3. That the charge was erroneous: — *Chandler v. Allison,* 10 *Mich.* 474; and cases above cited.

*Jerome & Swift* and *A. B. Maynard,* for defendant in error, cited:

1. To show that the questions were inadmissible: — 16 *N. Y.* 489; 12 *Wis.* 313; 11 *Ill.* 613; 19 *Geo.* 416; 15 *Ind.* 499; 13 *Gray,* 429; 38 *Me.* 361; 16 *Barb.* 386; 3 *Mich.* 63; 36 *Barb.* 31; 7 *Hill,* 61; 13 *How.* 307; 7 *Cush.* 5, 16; 6 *N. Y.* 85; 21 *Wend.* 342; 9 *Exch.* 341; 6 *H. & N.* 210; 9 *C. B.* 632; 10 *Cush.* 177; 22 *Geo.* 269; 5 *Denio,* 306; 13 *Gray,* 481; 4 *C. B.* 322; 6 *H. & N.* 914; 32 *Barb.* 530; 1 *How.* 35; 13 *How.* 101; 21 *Pick.* 378; 11 *Barb.* 368; 29 *Conn.* 479; 2 *Wis.* 427; 3 *E. D. Smith,* 144; 29 *Ala.* 318; 14 *Ala.* 69; 17 *Ala.* 408; 5 *Ohio St.* 594; 6 *Pet.* 282; 6 *Hill,* 522; 4 *Barb.* 261; 6 *Barb.* 423; 5 *Duer,* 64; 1 *Duer,* 342; 8 *N. Y.* 115; 1 *Hilt.* 39, 420.

2. That the averment in the declaration did not warrant proof of loss of profits, if otherwise admissible: — 2 *Pars. on Cont.* 453; 1 *Mass.* 47; 13 *Barb.* 183; 12 *Wend.* 64; 4 *Q. B.* 493; 14 *Wend.* 159; 16 *Johns.* 122; 25 *Ill.* 86; 31 *Mo.* 117; 11 *Ind.* 522; 32 *Me.* 378; 47 *Me.* 419; 8 *Barr,* 479.

3. That the exceptions to the charge were not well taken: — 10 *Wis.* 388; 29 *Conn.* 479; 3 *R. I.* 88; 26 *Conn.* 355, 416; 7 *Jones,* 272; 2 *N. H.* 135; *Baldw.* 138; 8 *Ired.* 236; 1 *Barr,* 190; 10 *Barr,* 145; 14 *Penn.* 96; 1 *W. & S.* 13; 13 *How.* 363; 6 *Pet.* 282; 21 *Wend.* 144; 21 *How.* 202.

CHRISTIANCY J.:

When this cause was formerly before us (*Chandler v. Allison*, 10 *Mich.* 460), one of the questions involved was, whether Allison, the plaintiff, was rightfully in possession of the store at the time the trespass was committed, or whether his right of possession was dependent upon Chandler's election to rebuild, and ceased when that election was made: and one of the grounds upon which the judgment in that case was reversed, was, the rejection of evidence tending to show that Allison's right of possession was thus qualified. But as the case now appears before us upon exceptions taken on the new trial, the finding of the jury, whether right or wrong—no exception having been taken to the evidence or the charge upon this point—requires us to treat this question, so far as we are now to consider the case, as settled in favor of the plaintiff; and the defendant must be considered as a trespasser, entering upon the premises and tearing down the store while in the rightful possession of the plaintiff, under a lease for a term which would not expire till the first day of May following.

The only question presented by the present bill of exceptions, and not already disposed of by our former decision, is the question of damages; and in this action of trespass (as parties are under no necessity of protecting themselves by contract against trespasses), the question of damages is to be treated in all respects as it would have been, had the trespass been committed by a party between whom and the plaintiff the relation of landlord and tenant did not exist; except so far as the good faith of the defendant, and the absence of malice on his part, might preclude the plaintiff from the recovery of damages of a punitory and exemplary character, beyond the amount which would compensate the actual loss. Upon this point (the question of exemplary damages) we think the Court

below was right in instructing the jury, that, if they should find the defendant, in tearing down the store, acted in good faith, and under an honest belief that he had a legal right to do so, then the plaintiff could only recover his actual damages. This qualification of the right of a jury to give punitory or exemplary damages in actions of trespass, is, we think, in accordance with the principle upon which such damages are sometimes allowed to be given. But whether the rulings of the Court, upon the admission of evidence, and in the charge to the jury, did not lay down too narrow a rule for the estimation of actual damages, is the main question for our consideration.

While in many cases the rule of damages is plain and easy of application, there are many others in which, from the nature of the subject matter, and the peculiar circumstances, it is very difficult—and in some cases impossible—to lay down any definite, fixed rule of law by which the damages actually sustained can be estimated with a reasonable degree of accuracy, or even a probable approximation to justice; and the injury must be left wholly, or in great part, unredressed, or the question must be left to the good sense of the jury upon all the facts and circumstances of the case, aided by such advice and instructions from the court as the peculiar facts and circumstances of the case may seem to require. But the strong inclination of the courts to administer legal redress upon fixed and certain rules has sometimes led to the adoption of such rules in cases to which they could not be consistently or justly applied. Hence there is, perhaps, no branch of the law upon which there is a greater conflict of judicial decisions, and none in which so many merely arbitrary rules have been adopted. We have carefully examined all the cases cited in the very elaborate briefs of the respective counsel, and the most approved elementary treatises upon the subject; and, without attempting here to compare and analyze them (which would require

a treatise), we are compelled to say that the line of mere authority upon questions of damages like that here presented, if any such line can be traced through the conflict of hostile decisions, is too confused and tortuous to guide us to a safe or satisfactory result, without resort to the principles of natural justice and sound policy which underlie these questions, and which have sometimes been overlooked, or obscured by artificial distinctions and arbitrary rules.

The principle of compensation for the loss or injury sustained, is, we think, that which lies at the basis of the whole question of damages in most actions at common law, whether of contract or tort. We do not here speak of those actions in which punitory or exemplary damages may be given, nor of those whose principal object is the establishment of a right, where merely nominal damages are proper. But, with these exceptions, the only just theory of an action for damages, and its primary object, would seem to be, that the damages to be recovered should compensate the loss or injury sustained. We concur entirely with the Court of Appeals in New York in *Griffin v. Colver*, 10 *N. Y.* 492, in repudiating the doctrine adopted by Mr. Sedgwick, from Domat (Sedgw. on Dams., 3, 37, 38, &c.), that "the law aims not at the satisfaction, but the division, of the loss." Such, it is true, is often the result of an action, but never the object of the law. The law may, and often does, fail of doing complete justice, from the imperfection of its means of ascertaining truth, and tracing and apportioning effects to their various causes; but it is not liable to the reproach of doing positive injustice by design. Such a doctrine would tend not only to make the law itself odious, but to corrupt its administration, by fostering a disregard of the just rights of parties. In actions upon contract, especially, and those nominally in tort, but substantially upon contract, courts have thought it generally safer, upon the whole, to adopt certain definite rules for the government of the jury by which the damages could be

estimated, at the risk of falling somewhat short of the actual damages, by rejecting such as could not be estimated by a fixed rule, than to leave the whole matter entirely at large with the jury, without any rule to govern their discretion, or to detect or correct errors or corruption in the verdict. In such cases, therefore, there has been a strong inclination to seize upon such elements of certainty as the case might happen to present, and as might approximate compensation, and to frame thereon rules of law for the measurement of damages, though it might be evident that further damages must have been suffered, which, however, could only be estimated as matter of opinion, and must therefore be excluded under the rules thus adopted. And it is not to be denied that this course of decision has ¦sometimes been extended to actions purely of tort.

But whatever plausibility there may be in the theory of Mr. Sedgwick when applied to actions upon contract — a plausibility which arises from mistaking the result for the object — the injustice of such a principle, when applied to cases of actual, positive tort, like that here in question, would be so gross as to shock all sense of justice.

It has been frequently said that the rule of damages, where there is no fraud, willful negligence, malice, oppression, &c., is the same in actions of tort as in those upon contract. But, though the remark is doubtless true in its application to those cases of tort where, from the nature of the case, elements of certainty exist, by which substantial compensation may be readily estimated, and other cases which are but nominally in tort, we do not think it can be accepted as a principle of universal application; nor, in our opinion, can it be justly applied to any case of actual, aggressive tort, where, from the nature and circumstances of the case itself, no such elements of certainty are found to exist, or none which will apply substantially to the whole case: nor to any case where the rule applicable to breaches of contract would exclude a material portion of the damages the injured

party may have suffered, though the amount of the latter may not be capable of accurate calculation by any fixed and definite rule.

There are some important considerations which tend to limit damages in an action upon contract, which have no application to those purely of tort. Contracts are made only by the mutual consent of the respective parties: and each party, for a consideration, thereby consents that the other shall have certain rights as against him, which he would not otherwise possess. In entering into the contract the parties are supposed to understand its legal effect, and, consequently, the limitations which the law, for the sake of certainty, has fixed for the recovery of damages for its breach. If not satisfied with the risk which these rules impose, the parties may decline to enter into the contract, or may fix their own rule of damages when, in their nature, the amount must be uncertain. Hence, when suit is brought upon such contract, and it is found that the entire damages actually sustained can not be recovered without a violation of such rules, the deficiency is a loss, the risk of which the party voluntarily assumed on entering into the contract, for the chance of benefit or advantage which the contract would have given him in case of performance. His position is one in which he has voluntarily contributed to place himself, and in which, but for his own consent, he could not have been placed by the wrongful act of the opposite party alone.

Again, in the majority of cases upon contract, there is little difficulty from the nature of the subject, in finding a rule by which substantial compensation may be readily estimated; and it is only in those cases where this can not be done, and where, from the nature of the stipulations, or the subject matter, the actual damages resulting from a breach, are more or less uncertain in their nature, or difficult to be shown with accuracy by the evidence, under any definite rule, that there can be any great failure of justice by adhering to such rule as will most

nearly approximate the desired result. And it is precisely in these classes of cases that the parties have it in their power to protect themselves against any loss to arise from such uncertainty, by estimating their own damages in the contract itself, and providing for themselves the rules by which the amount shall be measured, in case of a breach; and if they neglect this, they may be presumed to have assented to such damages as may be measured by the rules which the law, for the sake of certainty, has adopted.

Again, in analogy to the rule that contracts should be construed as understood and assented to by the parties —if not as a part of that rule—damages which are the natural, and, under the circumstances, the direct and necessary result of the breach, are often very properly rejected, because they cannot fairly be considered as having been within the contemplation of the respective parties at the time of entering into the contract.

None of these several considerations have any bearing in an action purely of tort. The injured party has consented to enter into no relation with the wrong doer by which any hazard of loss should be incurred; nor has he received any consideration, or chance of benefit or advantage, for the assumption of such hazard; nor has the wrong doer given any consideration, nor assumed any risk, in consequence of any act or consent of his. The injured party has had no opportunity to protect himself by contract against any uncertainty in the estimate of damages: no act of his has contributed to the injury: he has yielded nothing by consent: and, least of all, has he consented that the wrong doer might take or injure his property or deprive him of his rights, for such sum as, by the strict rules which the law has established for the measurement of damages in actions upon contract, he may be able to show, with certainty, he has sustained by such taking or injury. Especially would it be unjust to presume such consent, and to hold him to the recovery of such damages

only as may, be measured with certainty by fixed and definite rules, when the case is one which, from its very nature, affords no elements of certainty by which the loss he has actually suffered can be shown with accuracy by any evidence of which the case is susceptible. Is he to blame because the case happens to be one of this character? He has had no choice, no selection. The nature of the case is such as the wrong doer has chosen to make it: and upon every principle of justice, *he* is the party who should be made to sustain all the risk of loss which may arise from the uncertainty pertaining to the nature of the case, and the difficulty of accurately estimating the results of his own wrongful act. Upon what principle of right can courts of justice assume—not simply to divide this risk, which would be thus far unjust—but to relieve the wrong doer from it entirely, and throw the *whole* upon the innocent and injured party? Must not such a course of decision tend to encourage trespasses, and operate as an inducement for parties to right themselves by violence, in cases like the present?

Since, from the nature of the case, the damages cannot be estimated with certainty, and there is a risk of giving by one course of trial less, and by the other more than a fair compensation — to say nothing of justice — does not sound policy require that the risk should be thrown upon the wrong doer instead of the injured party? However this question may be answered, we can not resist the conclusion that it is better to run a slight risk of giving somewhat more than actual compensation, than to adopt a rule which, under the circumstances of the case, will, in all reasonable probability, preclude the injured party from the recovery of a large proportion of the damages he has actually sustained from the injury, though the amount thus excluded can not be estimated with accuracy by a fixed and certain rule. Certainty is doubtless very desirable in estimating damages in all cases: and where, from the nature

and circumstances of the case, a rule can be discovered by which adequate compensation can be accurately measured, the rule should be applied in actions of tort, as well as in those upon contract. Such is quite generally the case in trespass and trover for the taking or conversion of personal property; if the property (as it generally is) be such as can be readily obtained in the market and has a market value. But shall the injured party in an action of tort, which may happen to furnish no element of certainty, be allowed to recover no damages (or merely nominal), because he can not show the exact amount with certainty, though he is ready to show, to the satisfaction of the jury, that he has suffered large damages by the injury? Certainty, it is true, would thus be attained; but it would be the certainty of injustice. And, though a rule of certainty may be found which will measure *a portion* and *only a portion* of the damages, and exclude a very material portion, which it can be rendered morally certain the injured party has sustained, though its exact amount can not be measured by a fixed rule; here to apply any such rule to the whole case, is to misapply it: and so far as it excludes all damages which can not be measured by it, it perpetrates positive injustice under the pretence of administering justice.

The law does not require impossibilities; and can not therefore require a higher degree of certainty than the nature of the case admits. And we can see no good reason for requiring any higher degree of certainty in respect to the amount of damages, than in respect to any other branch of the cause. Juries are allowed to act upon probable and inferential, as well as direct and positive proof. And when, from the nature of the case, the amount of the damages can not be estimated with certainty, or only a part of them can be so estimated, we can see no objection to placing before the jury all the facts and circumstances of the case, having any tendency to show damages, or their probable amount; so as to enable them to make the most intelligible

and probable estimate {which the nature of the case will permit. This should, of course, be done with such instruc-tions and advice from the Court as the circumstances of the case may require, and as may tend to prevent the allowance of such as may be merely possible, or too remote or fanciful in their character to be safely considered as the result of the injury.

In the adoption of this course it will seldom happen that the Court, hearing the evidence, will not thereby possess the means of forming a satisfactory judgment whether the damages are unreasonable, or exorbitant; and, if satisfied they are so, the Court have always the power to set aside the verdict and grant a new trial.

The justice of the principles we have endeavored to explain will, we think, be sufficiently manifest in their application to the present case. The evidence strongly tended to show an ouster of the plaintiff for the balance of the term, by the defendant's act. This term was the property of the plaintiff; and, as proprietor, he was entit-led to all the benefits he could derive from it. He could not by law be compelled to sell it for such sum as it might be worth to others; and, when tortiously taken from him against his will, he can not justly be limited to such sum—or the difference between the rent he was paying and the fair rental value of the premises—if the premises were of much greater and peculiar value to him, on account of the business he had established in the store, and the resort of customers to that particular place, or the good will of the place, in his trade or business. His right to the full enjoyment of the use of the premises, in any manner not forbidden by the lease, was as clear as that to sell or dispose of it, and was as much his property as the term itself, and entitled to the same pro-tection from the laws. He had used the premises as a jewelry store, and place of business for the repairing of watches, making gold pens, &c. This business must be

broken up by the ouster, unless the plaintiff could obtain another fit place for it; and if the only place he could obtain was less fitted and less valuable to him for that purpose, then such business would be injured to the extent of this difference; and this would be the natural, direct and immediate consequence of the injury. To confine the plaintiff to the difference between the rent paid and the fair rental value of the premises to others, for the balance of the term, would be but a mockery of justice. To test this, suppose the plaintiff is actually *paying that full rental value*, and has established a business upon the premises, the clear gains or profits of which have been an average of one thousand dollars per year; and he is ousted from the premises and this business entirely broken up for the balance of the time; can he be allowed to recover nothing but six cents damages for his loss? To ask such a question is to answer it. The rule which would confine the plaintiff to the difference between such rental value and the stipulated rent can rest only upon the assumption that the plaintiff might (as in case of personal property) go at once into the market and obtain another building equally well fitted for his business, and that for the same rent; and to justify such a rule of damages this assumption must be taken as a conclusive presumption of law. However such a presumption might be likely to accord with the fact in the city of New York, in most western cities and towns it would be so obviously contrary to the common experience of the facts, as to make the injustice of the rule gross and palpable. But we need not further discuss this point, as a denial of any such presumption was clearly involved in our former decision.

The plaintiff in this case did hire another store, "the best he could obtain, but not nearly so good for his business"—"his costumers did not come to the new store, and there was not so much of a thoroughfare by it, not one quarter of the travel, and he relied much upon chance

custom, especially in the watch repairing and other mechanical business." This injury to the plaintiff's business was as clearly a part of his damages as the loss of the ~~time~~ *term* itself. This point also was decided in the former case, and we there further held that the declaration was sufficient to admit the proof of this species of loss.

Now if the plaintiff is to be allowed to recover for this injury to his business, it would seem to follow, as a necessary consequence, that the value of that business before the injury as well as after, not only might, but *should* be shown, as an indispensable means of showing the amount of loss from the injury. If the business were a losing one to the plaintiff before, his loss from its being broken up or diminished (if any thing) would certainly be less than if it were a profitable one. It is not the *amount of business done*, but the *gain* or *profit* arising from it, which constitutes its value.

But it is insisted that loss of profits constitutes no proper ground or element of damages. If there be any such rule of law it is certainly not a universal, and can hardly be called a general rule. Decisions, it is true, may be found which seem to take it for granted that the rule is universal. But there are numerous cases, even for breach of contract, in which profits have been properly held to constitute, not only an *element*, but a *measure* (and sometimes the *only measure*) of damages: as in *Masterton v. The Mayor*, 7 *Hill*, 61; *Phil. W. & B. R. R. Co. v. Howard*, 13 *How.* 344. And in actions for breach of contract in not delivering goods (as wheat or other articles) having a marketable value, as well as in most actions of trespass or trover for the taking or conversion of such property—wherever the difference between the contract price, or the market value at the time of taking or conversion, and the higher market value at any subsequent [period, is held to constitute the damages — in all such cases this difference of price is but another name for profits, and is yet very pro-

perly held to be a measure of damages. There is nothing therefore in the nature of profits, as such, which prevents their allowance as damages. But in many, and perhaps the majority, of cases upon contract in which the question has arisen, they have been held to be too remote or dependent upon too many contingencies to be calculated with reasonable certainty, or to have been within the contemplation of the parties at the time of entering into the contract.

But there are also cases for breach of contract where, though the profits were in their nature somewhat uncertain and contingent (and in most of them quite as much so as in the present case), they were yet held to constitute, not strictly a measure, but an element of damages proper for the consideration of a jury, to enable them to form a judgment or probable estimate of the damages; as in *McNeill v. Reid*, 9 *Bing.* 68; *Bagley v. Smith*, 10 *N. Y.* 489; *Gale v. Leckie*, 2 *Stark.* 107; *Ward v. Smith*, 11 *Price*, 19; *Driggs v. Dwight*, 17 *Wend.* 71; and see *Passenger v. Thorburn*, 35 *Barb.* 17. And in *Waters v. Towers*, 20 *E. L. & E.* 410 the jury were allowed to take into consideration the profits which might have been made upon a collateral contract (though void by the Statute of Frauds); and see *McNeill v. Reid, supra;* while, by the American authorities, profits of this description have been almost uniformly rejected.

But whatever may be the rule in actions upon contract, we think a more liberal rule in regard to damages for profits lost, should prevail in actions purely of tort (excepting perhaps the action of trover). Not that they should be allowed in all cases without distinction: for there are some cases where they might, in their nature, be too entirely remote, speculative or contingent, to form any reliable basis for a probable opinion. And perhaps the decisions which have excluded the anticipated profits of a voyage broken up by illegal capture, or collision, may be properly justified upon this ground: upon this,

however, we express no opinion. But generally, in an action purely of tort, where the amount of profits lost by the injury can be shown with reasonable certainty, we think they are not only admissible in evidence, but that they constitute, thus far, a safe measure of damages; as when they are but another name for the use of a mill (for example), as in *White v. Moseley*, 8 *Pick.* 356; or for the use of any other property where the value or profit of the use can be, made to appear with reasonable certainty by the light of past experience, as might often be done where such profits had been for a considerable time uniform at the same season of the year, and there are no circumstances tending to show a probable diminution, had the injury not occurred. And possibly the same view, subject to the like qualifications, might have been taken of the 'profits of the plaintiff's business, had it been confined to the mechanical trade of repairing watches and making gold pens, particularly if done purely as a cash business. But this business seems to have been carried on with that of the sale of jewelry; he kept a jewelry store, and the profits of so much of his business as may be regarded as mercantile business, are dependent upon many more contingencies, and therefore more uncertain, especially if sales are made upon credit. Past profits, therefore, could not safely be taken as the exact measure of future profits; but all the various contingencies by which such profits would probably be affected should be taken into consideration by the jury, and allowed such weight as they, in the exercise of good sense and sound discretion, should think them entitled to. Past profits in such cases, where the business has been continued for some length of time, would constitute a very material aid to the jury in arriving at a fair probable estimate of the future profits, had the business still continued without interruption.

Accordingly such past profits have been allowed for this purpose,. both in actions *ex contractu* and *ex delicto*, though

more frequently in the latter, where from the nature of the case no element of greater certainty appeared, and the actual damages must be more or less a matter of opinion; and where, as in the present case, though somewhat inconclusive, it was the best evidence the nature of the case admitted. See *Wilkes v. Hungerford,* 2 *Bing. N. C.* 281; *Ingram v. Lawson,* 6 *Bing. N. C.* 212; *Lacour v. The Mayor,* 4 *Duer,* 406; and the following in actions upon contract, *Driggs v. Dwight,* 17 *Wend.* 71; *Bagley v. Smith,* 10 *N. Y.* 489.

But it is. urged by the counsel for the defendant that damages for the loss of profits ought not to be allowed, because they could not have been within the contemplation of the defendant. Whether, as matter of fact, this is likely to have been true, we do not deem it important to inquire. It is wholly immaterial whether the defendant in committing the trespass actually contemplated this, or any other species of damage to the plaintiff. This is a consideration which is confined entirely to cases of contracts, where the question is, what was the extent of obligation, in this respect, which both parties understood to be created by the contract. But where a party commits a trespass he must be held to contemplate all the damages which may legitimately follow from his illegal act. And where a party, though acting in good faith, yet knowing his right to be disputed by a party in possession, instead of resorting to a judicial trial of his right, assumes to take the law into his own hands, and, by violence, to seize the property or right in dispute, he must be held thereby to assume, on the one hand, the risk of being able to show, when the other party brings him into Court, that the property or right was his or that his act was legal; or, on the other, of paying *all* the *damages* the injured party may have suffered from the injury; and if those damages are in their nature uncertain, then such as, from all the circumstances, or the best light the nature

ALLISON v. CHANDLER.

of the case affords, a jury in the exercise of good sense and sound discretion, may find to be a full compensation.

We are therefore entirely satisfied that all the questions put to the witness, Allison, touching the nature, extent and profits of the business, before and after the trespass, were competent, and improperly overruled; and that the charge of the Court, so far as it excluded all consideration of the good will of the place, its peculiar value to the plaintiff, and his probable profits, was erroneous.

The judgment must be reversed, with costs to the plaintiff, and a new trial granted.

The other Justices concurred.