## McDUFFEE v. COLWELL.

1. LANDLORD AND TENANT—LEASE—SPECIFIC PERFORMANCE—COVENANT TO HEAT—INTERFERENCE OF WAR REGULATIONS.

On a bill for the specific performance of an agreement in a lease to heat a store building, and for damages for failure to perform, defendant is liable if he failed to make use of the fuel available in heating said building, although because of fuel regulations it was impossible for him to keep the temperature up to the standard required by the contract.

2. SAME—DAMAGES—CERTAINTY—LIABILITY.

Because of the difficulty in establishing with certainty the extent of plaintiff's damages, defendant should not be allowed to escape all liability growing out of his wrong, where the evidence shows that there was a loss.

For authorities discussing the question of duty and liability of landlord of apartment as to heating, see note in 37 L. R. A. (N. S.) 1213.

Appeal from Wayne; Mayne, J., presiding. Submitted June 3, 1919. (Docket No. 32.) Decided July 17, 1919.

Bill by Charles S. McDuffee against Daniel L. Colwell for the specific performance of a contract, and damages for failure to perform. From a decree for plaintiff, defendant appeals. Affirmed.

*Henry H. Wait,* for plaintiff.

*Schmalzriedt & Toms* (*Ezra H. Frye,* of counsel), for defendant.

MOORE, J. In May, 1916, the plaintiff entered into a five-year written lease for two store buildings with defendant, who was, as part of the consideration, to heat the buildings. Plaintiff claims defendant did not heat the stores as he agreed and filed this bill to compel the specific performance of the agreement to furnish heat in the premises covered by the lease. Plaintiff also claims damages resulting from loss in his business in December, 1917, and January, 1918, by reason of the refusal of defendant to furnish reasonable heat. The trial court decreed specific performance and allowed plaintiff $200 damages. The case is brought here by appeal.

We quote from the brief of appellant:

"Under these facts the following legal questions arise:

"(1) Can there be liability on the part of the landlord for alleged damages arising from the acts of third persons not under his control or acting without his consent, and particularly for acts of the municipal police, acting under the fuel administrator in the exercise of war powers?

"(2) If the landlord is liable under such circumstances, what is the correct measure of damages?

"(3) Can damages be recovered for loss of probable profits based upon speculative and uncertain sales?

"1. We submit that this court should take judicial notice of the fuel stringency in Detroit and vicinity in the winter of 1917 and 1918. *Konieczny* v. *Railway Co.*, 164 Mich. 66; *Inglis* v. *Driving Ass'n*, 169 Mich. 311, and the state of war in which this country was at that time; the unusual cold temperatures of December, 1917, and January, 1918, in Detroit and vicinity; the conduct of local fuel administrators during this winter acting under powers vested in the President of the United States by congress. Fed. Stat. Ann. (2d Ed.) p. 181, § 1 (Supp. of 1918, Act of August 10, 1917).

"It is undisputed that the defendant had provided upwards of 500 tons of good fuel for the purpose of heating plaintiff's stores during the winter of 1917-1918, which fuel was taken from him by government authority, and the trial court also found that defendant was obliged to use fuel not adapted to the particular furnace used in heating the stores in question."

There is a very learned discussion of the subject of "Subsequent Impossibility of Performance as Affecting Contractual Obligations" in volume 17, Mich. Law Review, p. 689, but we do not think that subject is important here. In the instant case the trial judge who heard and saw the witnesses stated in part in his opinion:

"The court finds that the defendant did not make use of said fuel in heating such building to the extent that it was possible for him to do. That the building could have been kept to a higher degree of temperature than it was kept although not possibly up to the standard required by the contract.

"The court finds that there was a falling away in the sales for the month of December and January from that of previous months and in comparison with those months, and the court finds that it can be traced to insufficiency of heat, and that the defendant is responsible under the terms of his contract for this loss. In other words that he is not excused by reason of the acts of the fuel administration in seizing the coal and making use of it otherwise.

"The court determines that specific performance may be decreed and the damages of the plaintiff assessed at the sum of $200.

"I am making allowance somewhat in this petition for the fact that even under the most favorable circumstances it might not have been possible to have kept the heat to normal.  Therefore I do not hold the defendant responsible for the full damages,  *  *  * and I allow such a percentage of profits as will amount to $200."

A reading of the record justifies the conclusion of the trial judge that defendant might have done much better in heating the premises than he did.  It is probable that if rents had not so advanced that the stores occupied by the plaintiff for which he was paying a rental of $85 a month would rent for $125 a month, there would have been less trouble about the heat.

Groups two and three may be considered together. It is claimed that the proof of damages based upon profits is too speculative and uncertain to warrant a verdict for any substantial amount.  The plaintiff produced in court the original entries of each day's sales and the bank book showing deposits for comparative months in 1916, 1917 and 1918.  There was a decrease in December, 1917, from December, 1916, of $771; likewise in January, 1918, from January, 1917, of $308, making a total of $1,079 decrease for the two months in question, while in every other comparative month there was an increase in gross receipts of plaintiff's business, except the month of August, 1917.  He also introduced testimony tending to show that instead of a decrease in the gross receipts as above set forth during this holiday season there should have been an increase of at least $4,000; that he was equipped to handle the increased business; that his overhead expenses would be practically the

same therefor and that the average profit on the gross receipts was 33 1/3 per cent.

17 C. J. p. 910, reads as follows:

"As has already been stated, profits cannot be recovered as an element of damages where they are speculative, contingent or uncertain. Hence there must be reasonable proof of their amount, and for this purpose, actual past profits and receipts in the particular business or undertaking, where not too remote from the injury or wrong complained of, and although they may vary from time to time, may be shown, although they cannot be taken as exact measure of future profits; and the various contingencies by which they would probably be affected should be considered and given such weight as they are entitled to in the sound discretion of the jury."

The cases of *Allison* v. *Chandler*, 11 Mich. 542, and *Moss* v. *Railway Co.*, 188 Mich. 1, are in point.

In the instant case the defendant should not be allowed to escape all liability growing out of his wrongdoing because of the difficulty in establishing with certainty the extent of the damages.

The decree is affirmed, with costs to the plaintiff.

BIRD, C. J., and OSTRANDER, STEERE, BROOKE. FELLOWS, STONE, and KUHN, JJ., concurred.